| | |
|---|---|
| MELISSA W. EDWARDS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL,[1] ) <br> Acting Commissioner of ) <br> Social Security Administration, ) <br> ) <br> Defendant. ) <br> _____ ) | **ORDER** |

**THIS MATTER** comes before the Court on Melissa W. Edward's ("Plaintiff's") Motion for Summary Judgment, (Doc. No. 11), and Memorandum in Support, (Doc. No. 12), and Defendant's Motion for Summary Judgment, (Doc. No. 13), and Memorandum in Support, (Doc. No. 14).

**I.      BACKGROUND**

   A.      Procedural Background

Plaintiff seeks judicial review of Defendant's denial of her social security claim. (Doc. No. 1). On July 11, 2013, Plaintiff filed her application for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 et seq. (Doc. Nos. 10 to 10-8: Administrative Record ("Tr.") at 48–49). In her application, Plaintiff alleged an inability to work due to disabling conditions of: (1) major back surgery in April 2013, on bone stimulizer; (2) bone stimulator in lower back; (3) spinal fusion; (4) removed disc; (5) high cholesterol; and (6) diabetes.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill has been substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

(Tr. 48). Plaintiff claimed that these conditions began on January 21, 2013. (Tr. 49). Plaintiff's application was denied initially and upon consideration. (Tr. 8).

On June 27, 2016, a hearing was held in front of an Administrative Law Judge ("ALJ" (Tr. 23–47). On July 15, 2016, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 8–19). The Appeals Council denied review of the ALJ's decision on September 1, 2016, making the ALJ's opinion the final decision of Defendant. (Tr. 1–3). Plaintiff now appeals the ALJ's decision to this Court pursuant to 42 U.S.C. §405(g).

B.  Factual Background

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between January 21, 2013, Plaintiff's alleged onset date, and July 15, 2016, the date of the ALJ's decision.[2] (Tr. 8). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ ultimately concluded that Plaintiff was not under a disability at any point in the relevant timeframe. (Tr. 19).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes,

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

>           disabled;
> (4) whether claimant has the residual functional capacity ("RFC")
>     to perform his or her past relevant work—if yes, not disabled;
>     and
> (5) whether considering claimant's RFC, age, education, and work
>     experience he or she can make an adjustment to other work—if
>     yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i–v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. at 18).

To begin with, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity since January 21, 2013, her alleged onset date. (Tr. 10). At the second step, the ALJ found that Plaintiff had the following severe impairments: "lumbar degenerative disc disease, status post lumbar fusion, 1ight knee degenerative joint disease, diabetes mellitus, and obesity." (Id.). At the third step, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1." (Tr. 11).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform:

> light work as defined in 20 CFR 404.1567(b) except that she is further limited to occasional bending, stooping, squatting, twisting, crawling, and crouching, and no climbing or work around dangerous heights or equipment. She must be allowed to alternate between sitting and standing at will. She can occasionally use the light leg to operate equipment.

(Id.). In making her finding, the ALJ specifically stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Id.). The ALJ further opined that she "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs [Social Security Rulings] 96-2p, 96-5p, 96-6p and 06-3p." (Id.).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work. (Tr. 17). Finally, at the fifth and final step, the ALJ concluded that, after "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 18). Therefore, the ALJ determined that Plaintiff was not under a "disability," as defined by the Social Security Act, between January 21, 2013 and July 15, 2016. (Id.).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

Plaintiff asks the Court to reverse or remand the Commissioner's decision, arguing that the ALJ erred by: (1) reducing the weight afforded to the opinion of Plaintiff's treating physician; (2) failing to investigate potential conflicts between the VE's testimony and the DOT; and (3) reducing the credibility of Plaintiff's testimony. For the reasons set forth below, the Court denies Plaintiff's request for summary judgment and affirms the decision of the Commissioner.

### A. The ALJ Did Not Err in Reducing the Weight Afforded to Plaintiff's Treating Physician.

Plaintiff first alleges that the ALJ erred by rejecting the opinion of Plaintiff's treating physician, Dr. Hatharasinghe. (Doc. No. 12 at 5). The ALJ assigned less weight to Dr. Hatharasinghe's opinions because they lacked explanation and were based on Plaintiff's "subjective complaints and a desire to help a longtime patient obtain disability." (Tr. 16). Plaintiff argues that the ALJ's reasoning fails to pass muster because the ALJ did not list any other medical opinions of record when weighing Dr. Hatharasinghe's opinion and that, as a layperson, the ALJ is not qualified to interpret raw data within the medical record. (Doc. No. 12 at 7).

Plaintiff's arguments are unconvincing. An ALJ is not required to adopt a primary physician's opinion if he determines that it does not coincide with other significant record evidence. Yes, the ALJ must afford controlling weight to a treating source's medical opinion when

it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record…." 20 C.F.R. § 404.1527(c). However, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996); Ruff v. Colvin, No. 1:12-CV-165-RJC, 2013 WL 4487502, at *3 (W.D.N.C. Aug. 20, 2013).

In Mastro v. Apfel, the Fourth Circuit found that the ALJ properly discounted a treating physician's opinion when he based his diagnosis largely upon the claimant's self-reported subjective symptoms and complaints. 270 F.3d 171, 178 (4th Cir. 2001). The Court reasoned that the claimant's other laboratory tests and medical examinations were within normal parameters and that no other doctor determined that the claimant was disabled. Id. Here, the ALJ affords similar reasoning. He noted that Dr. Hatharasinghe's findings, such as the amount of weight Plaintiff could lift, were particularly limiting and more severe than the findings of Plaintiff's surgeon, Dr. Seldomridge, to whose opinion the ALJ also assigned partial weight. (Tr. 16). The ALJ further noted that Dr. Hatharasinghe's opinion was incomplete. He failed to address Plaintiff's lumbar spine and leg complaints beyond noting that she wore a back brace. (Id.). The ALJ makes the point that Dr. Hatharasinghe's conclusion is both inconsistent with other medical evidence and in part unsupported.

The ALJ also afforded partial weight to Dr. Seldomridge's, Plaintiff's surgeon's, opinion. (Tr. 15–16). In doing so, the ALJ noted that Dr. Seldomridge's evaluations inexplicably became more and more limited over time. In November of 2013, he found that Plaintiff could not lift more than 25 pounds. (Tr. 15, 334). In September of 2014, he found that claimant could lift no more than 5–15 pounds. (Tr. 15–16, 393). By December, he concluded that Plaintiff would require

complete disability due to her difficulty of lifting greater than 15 pounds. (Tr. 16, 409). Like Dr. Hatharasinghe's opinion, the ALJ found that Dr. Seldomridge's opinions "adjusted the limitations to account for [Plainitff's] self-stated limitations and subjective complaints." (Id.). To support this conclusion, the ALJ emphasized that Dr. Seldomridge's physical examination findings have not worsened since 2013. (Id.). Therefore, "no objective findings [] explain why he increased the claimant's lifting restriction from twenty-five pounds seven months after surgery to fifteen pounds more than two years after surgery." (Id.).

Despite affording only partial credit to Dr. Seldomridge's opinions, the ALJ nonetheless tailored the RFC to the surgeon's findings. The RFC limits Plaintiff to light work, "which requires occasional lifting of twenty pounds, but frequent lifting of only ten pounds, which is less than Dr. Seldomridge's most recent assessment says she could do." (Id.). Furthermore, the ALJ's RFC determination allowed Plaintiff to sit and stand at will, which addressed Dr. Seldomridge's findings regarding Plaintiff's ability to stand or sit over the course of a full work day. (Id.).

Between the opinions of Dr. Seldomridge and Dr. Hatharasinghe, the ALJ noted the lack of evidence supporting their determinations. This becomes especially clear after realizing that other medical opinions found less severe limitations. As Defendant points out, a November 2013 consultative examination found that Plaintiff wore a back brace for comfort rather than necessity and did not use an assistive device. (Tr. 13). The examination also showed that Plaintiff had no tenderness to palpation over her spine and that she had a normal range of motion of the hips, knees, and ankles. (Id.). Additionally, a November 2014 examination by Dr. Jacqueline Zinn also found less severe results. She noted that Plaintiff did not use an assistive device, she had negative straight leg raises, intact sensation to light touch in her lower extremities, and normal range in her lumbar spine. (Tr. 14, 397).

Considering the inconsistencies between Dr. Seldomridge's and Dr. Hatharasinghe's opinions with the entire record, the Court finds substantial evidence within the ALJ's opinion to justify the partial weight given to those sources.

B. <u>The ALJ's Failure to Ask the VE about Potential Conflicts with the DOT Constitutes a Harmless Error.</u>

Plaintiff argues that this case warrants a remand because the ALJ failed to ask the Vocational Expert ("VE") whether his opinion conflicted with the Dictionary of Occupational Titles ("DOT") description of the jobs he suggested. (Doc. No. 12 at 10–16). During Plaintiff's hearing, a VE testified that, in accordance with the ALJ's posed hypothetical, Plaintiff could work the jobs of: (1) Cashier II, (DOT 211.462-010); (2) Storage Facility Rental Clerk, (DOT 295.367-026); and (3) Assembler of Small Products I (SOT 706.684-022). (Tr. 45–46). The ALJ's hypothetical limited the scenario to a claimant who needed a "sit, stand option at will." (<u>Id.</u> at 45). The ALJ did not, however, ask the VE during that hearing if these suggested jobs conflicted with the DOT. (<u>Id.</u>). Instead, in his written opinion, the ALJ stated, "Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the DOT except that the DOT does not address sit/stand option or breaks. Vocational experts base that information on experience and training." (Tr. 18).

SSR 00–4p requires ALJs to ask about conflicts between the evidence provided by the VE and the DOT. SSR 00-4P at *4 (S.S.A. Dec. 4, 2000). In <u>Pearson v. Colvin</u>, the Fourth Circuit clarified that the ALJ has two duties when it comes to assessing VE testimony:

> First, the ALJ must '[a]sk the [vocational expert] ... if the evidence he or she has provided conflicts with information provided in the [Dictionary]'; and second, '[i]f the [vocational expert]'s ... evidence appears to conflict with the [Dictionary ],' the ALJ must "obtain a reasonable explanation for the apparent conflict.' Notably, this second requirement is so independent of the first that it does not rest on the vocational expert's identification of a conflict.

Pearson v. Colvin, 810 F.3d 204, 208 (4th Cir. 2015) (quoting SSR 00–4p). The Fourth Circuit has interpreted this second duty to include an independent investigation by the ALJ of any apparent conflicts. Id. at 209. Here, Plaintiff points out that the ALJ failed to complete the first duty above when he failed to ask the VE about conflicts with the DOT during the hearing. (Doc. No. 12 at 11).

While ALJs have the affirmative duty to ask the VE if the evidence she produced conflicts with the DOT, a violation of that duty does not always warrant remand. An ALJ commits harmless error when she fails to inquire as to conflicts between the VE testimony and the DOT when no conflict existed in the first place.[3] It is therefore left to the Court to determine if an apparent conflict actually exists between the jobs recommended by the VE and the DOT.

Here, Plaintiff posits that the jobs of Cashier II, Storage Facility Rental Clerk, and Assembler of Small Products I would necessarily prevent Plaintiff from exercising the ability to sit at will. (Doc. No. 12 at 14–15). Plaintiff then imagines several scenarios such as when there is a rush of customers or when she would have to show rental units. (Id.). Defendant, however,

---

[3] Compare, Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007) (finding the ALJ's failure to inquire as to conflicts between the VE testimony and the DOT was harmless error because no conflict existed), and Critchley v. Colvin, No. 5:15-CV-08288, 2016 WL 3030211, at *8 (S.D.W. Va. May 4, 2016), report and recommendation adopted, No. 5:15-CV-08288, 2016 WL 3033763 (S.D.W. Va. May 26, 2016) (finding "any error by the ALJ in neglecting to follow SSR 00-4p was harmless and does not warrant remand" when the claimant was unable to point to any conflict between the VE testimony and the DOT), and Joines v. Colvin, No. 3:14-CV-00396-MOC, 2015 WL 1249579, at *9 (W.D.N.C. Mar. 18, 2015) (finding "that the ALJ's failure to explain any reconciliation of a conflict is harmless because the ALJ would have reached the same result regarding disability notwithstanding such error."), with Gosnell v. Astrue, No. 4:09-CV-03142-RMG, 2011 WL 124449, at *3–4 (D.S.C. Jan. 14, 2011) (finding the ALJ's failure to comply with SSR 00–4p was not harmless error when apparent conflicts existed), and Walls v. Astrue, No. 2:09-CV-01006, 2010 WL 5672742, at *5 (S.D.W. Va. Dec. 20, 2010), report and recommendation adopted, No. 2:09-CV-01006, 2011 WL 322645 (S.D.W. Va. Jan. 31, 2011) (finding that failure to ask about conflicts between the VE testimony and the DOT was not a harmless error when apparent conflicts did exits).

states that no conflict can exist when the DOT fails to mention sit/stand options to begin with. (Doc. No. 14 at 11).

Several cases support Defendant's position.[4] Other cases disagree, finding that a conflict could nonetheless arise when the DOT is silent on a specific limitation so long as the description presents an apparent conflict. See Finnegan v. Berryhill, No. 1:16CV1012, 2017 WL 2224332, at *7 (M.D.N.C. May 19, 2017) ("Although no apparent conflict arises based solely on the fact that the DOT does not address the use of portable oxygen at work, such a conflict could nevertheless exist between the VE's testimony and the DOT."). Either way, "if the DOT is silent, an ALJ has greater leeway to rely on the experience and testimony of a VE." Gordon v. Berryhill, No. 3:16-CV-130, 2017 WL 5759940, at *4 (W.D.N.C. Nov. 28, 2017) (citing Lusk v. Astrue, 2013 WL 498797, at *5 (W.D.N.C. Feb. 11, 2013)).

In Finnegan v. Berryhill, the district court found harmless error when an ALJ failed to inquire about potential conflicts between the VE testimony and the DOT. 2017 WL 2224332, at *7. The court found that while the DOT was silent as to jobs' accommodation to the use of an oxygen tank, conflicts could nonetheless arise within the DOT's description of duties within a specific job. Id. at *6–7. In that case, however, the plaintiff did not attempt to show that the DOT's description of specific jobs conflicted with the use of an oxygen tank. Id. at *7.

The Court declines to adopt the Finnegan stance. Previously, this Court found that:

> [w]here the DOT is 'silent as to the availability of a sit/stand option' for a position, it is 'entirely proper for the ALJ to obtain and consider

---

[4] See Williams v. Colvin, 2016 WL 1276415, at *5 (E.D.N.C. Mar. 30, 2016); Conn v. Astrue, 852 F. Supp. 2d 517, 528 (D. Del. 2012) ("Contrary to this argument, the VE's testimony and the DOT are not in conflict; the DOT simply does not address sit/stand options."); Thompson v. Astrue, No. CIV.A. 8:09-01968, 2010 WL 3878729, at *4 (D.S.C. June 16, 2010), report and recommendation adopted, No. CIV.A. 8:09-1968, 2010 WL 3880047 (D.S.C. Sept. 28, 2010), aff'd, 442 F. App'x 804 (4th Cir. 2011) (concluding that "there could be no apparent conflict as the DOT does not discuss the availability of a sit/stand option.").

> VE testimony in order to supplement the DOT job descriptions.' McFalls v. Astrue, No. 1:10CV063, 2011 WL 6000513, at *6 (W.D.N.C. Nov.30, 2011) (Reidinger, J.). The ALJ's hypothetical question encompassed all of the limitations from the RFC finding, including Plaintiff's limitation requiring a sit/stand option. The VE was an expert with an on-going knowledge of vocational practices who is qualified to determine which jobs Plaintiff could or could not perform. The VE testified that Plaintiff could make an adjustment and perform other work that exists in significant numbers in the local economy. *As the DOT was silent regarding a sit/stand option, there was no conflict or discrepancy between the DOT and the VE's testimony.* Consequently, the ALJ properly relied on the VE's testimony in making his step five finding that Plaintiff could perform other work.

Ruff v. Colvin, No. 1:12-CV-165-RJC, 2013 WL 4487502, at *7 (W.D.N.C. Aug. 20, 2013).[5] Here, the DOT for the jobs proposed by the VE offers no limitations on a claimant's ability to sit or stand at will. And, as in Ruff, the ALJ's hypothetical to the VE encompassed all of the limitations found within his RFC finding, including the sit/stand at will limitation. Compare (Tr. 11), with (Tr. 45). As such, the ALJ properly relied upon VE testimony to hold those jobs consistent with both the DOT and the hypothetical posed. Because no conflict existed within the DOT, the ALJ's error in failing to ask the VE about apparent conflicts is rendered harmless.

    C. <u>The ALJ Properly Determined Plaintiff's Credibility.</u>

Lastly, Plaintiff claims that the ALJ failed to sufficiently articulate his reasoning behind diminishing the credibility of Plaintiff's testimony. (Doc. No. 12 at 16). Plaintiff states that the ALJ did not state what portions of Plaintiff's testimony were found inconsistent and why. (Id. at 19). Plaintiff also states that the ALJ erred in making his credibility determination partly on the

---

[5] Nor does Pearson render this stance obsolete. In Pearson, the Fourth Circuit analyzed an apparent conflict in the DOT where three proposed jobs listed "reaching" as "frequent." The Court then fond that frequent reaching conflicted with a limitation in bilateral overhead reaching. Pearson, 810 F.3d at 210–11. Here, there is no value system for "sit/stand," therefore allowing the ALJ to relay on VE testimony that such limitations do not exist in the proposed jobs.

basis of Plaintiff's daily activities because the ALJ does not state why such "sporadic activities" can equate to working a full time job at a light exertional level. (Id.).

To support her argument, Plaintiff argues that "the Fourth Circuit has long held that the ability to perform sporadic daily activities is not inconsistent with a claim for disability." (Id.) (citing Totten v. Califano, 624 F.2d 10 (4th Cir. 1980). Plaintiff's point is hardly persuasive. While "sporadic daily activities" are not *entirely* inconsistent with a claim for disability, that does not discount the fact that daily activities may support a determination of a claimant not being disabled. In fact, if the Fourth Circuit has "long held" anything, it is recognizing "that daily activities may support the Commissioner's determination that a plaintiff is not disabled." Brim v. Chater, 74 F.3d 1230 (4th Cir. 1996) (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.1986)).[6] After all, "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Id. (quoting Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir.1994) (Hall, Circuit Judge, concurring)).

Here, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence or other evidence within the record. (Tr. 13). The ALJ then summarized relevant medical evidence, which included opinions with relatively nominal findings. (Tr. 13–15). Then, the ALJ emphasized Plaintiff's daily activities. (Tr. 15). Specifically, the ALJ noted that by November 2013, Plaintiff did her own dishes, laundry, and driving. (Id.). She swept, mopped, and weeded her yard. (Id.). Plaintiff also looked after her disabled sister who recently moved in. These duties included making sure her sister takes medication and supervising her showers. (Id.). Plaintiff's sister does not help

---

[6] See also Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 99 (4th Cir. 2015); Davis v. Apfel, 162 F.3d 1154 (4th Cir. 1998); Hickman v. Chater, 122 F.3d 1061 (4th Cir. 1997).

with household chores, either. (Id.). Additionally, Plaintiff spends eight hours a day reading and watching television. (Id.).

The activities above are clearly inconsistent with the extent of Plaintiff's testimony. She claimed to require a cane for walking and standing, yet several medical reports stated that she needed no assistive device. (Tr. 12, 13, 14). Plaintiff stated that she cannot do yard work, yet she weeds. Plaintiff states that she cannot clean the house yet she sweeps, mops, does laundry, and washes dishes. (Tr. 12, 15). As for Plaintiff's objection that the ALJ failed to connect her daily living activities with the ability to work a full workday, Plaintiff has the ability to spend eight hours a day reading and watching television. (Tr. 15). These daily activities plainly contradict Plaintiff's testimony regarding the extent of her symptoms and therefore constitute substantial evidence for the ALJ to give her testimony less weight.

## IV. CONCLUSION

Plaintiff has failed to show sufficient reasoning to warrant a reversal or remand of the Commissioner's decision. At most, the Court finds a harmless error in the ALJ's failure to inquire as to potential conflicts between the VE's testimony and the DOT.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 11), is **DENIED**;
2. Defendant's Motion for Summary Judgment, (Doc. No. 14), is **GRANTED**;
3. The Clerk of Court is directed to close this case.

Signed: March 6, 2018

Robert J. Conrad, Jr.
United States District Judge